UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/17/20

| | |
|---|---|
| MEI RONG DU, *on her own behalf and on behalf of others similarly situated*,<br><br>            Plaintiff,<br><br>-against-<br><br>DINGXIANG INC. *doing business as* BIRDS OF A FEATHER, CAFÉ CHINA GROUP LLC *doing business as* CHINA BLUE, SHANZHA INC *doing business as* CAFÉ CHINA, YIMING WANG, XIAN ZHANG, and RUI GANG WANG,<br><br>            Defendants. | 19-CV-11924 (JPO) (BCM)<br><br>**MEMORANDUM AND ORDER** |

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Mei Rong Du worked as a dim sum chef at Birds of a Feather restaurant, which is owned and operated by defendants Yiming Wang, Xian Zhang, and Rui Gang Wang (collectively, the Individual Defendants). She brought this action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq*., and state law, on behalf of herself and other similarly situated persons, alleging that the Individual Defendants, together with Dingxiang Inc. d/b/a Birds of a Feather (Dingxiang), Café China Group LLC d/b/a China Blue, and Shanzha Inc. d/b/a Café China (collectively, the Corporate Defendants) violated the minimum wage and overtime provisions of the FLSA and the New York Labor Law (NYLL) as well as the spread-of-hours and wage notice provisions of the NYLL. *See* Am. Compl. (Dkt. No. 25) ¶¶ 1-4, 8-17.

Now before the Court is plaintiff's motion for an order: (1) granting conditional certification of plaintiff's FLSA claims as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of all non-managerial, non-exempt employees of all three Corporate Defendants from December 30, 2016 (three years prior to the filing of plaintiff's complaint) to the present; (2)

directing defendants to provide the names, last known addresses, telephone numbers, email addresses, and social media usernames of all potential collective action members, together with information about where, when, and in what positions they worked for defendants; (3) approving plaintiff's proposed notice and consent form; (4) permitting plaintiff's counsel to disseminate the notice, in English and Chinese, via mail, email, text message, and/or social media, and to post it on counsel's website, and directing defendants to post it in their restaurants and include it in the pay envelopes of potential members of the collective; (5) setting a 90 day opt-in period; and (6) tolling the statute of limitations "for 90 days until the expiration of the Opt-In period." *See* Pl. Mem. (Dkt. No. 24) at 8-23.

The motion is "within the scope of my authority under 28 U.S.C. § 636(b)(1)(A)." *Sanchez v. Salsa Con Fuego, Inc.*, 2016 WL 4533574, at *1 (S.D.N.Y. Aug. 24, 2016) (Moses, M.J.) (quoting *Nahar v. Dozen Bagels Co. Inc.*, 2015 WL 6207076, at *1 (S.D.N.Y. Oct. 20, 2015)); *see also Warman v. Am. Nat'l Standards Inst.*, 2016 WL 3647604, at *1 n.1 (S.D.N.Y. June 27, 2016) ("Motions for conditional certification of a collective action under the FLSA are non-dispositive.").

For the reasons set forth below, plaintiff's motion will be granted in part.

## I.     BACKGROUND

### A.     Factual Background

The Defendants own and operate three restaurants: Birds of a Feather, located at 191 Grand Street, Brooklyn, NY 11211; China Blue, located at 135 Watts Street, New York, NY 10013; and Café China, located at 13 E 37th Street, New York, NY 10016. Am. Compl. ¶¶ 8-

10.[1] Plaintiff was employed as a dim sum chef (sometimes referred to as a pastry chef) at Birds of a Feather from May 7, 2018 through September 30, 3019, and then again (after an injury) from October 15 through October 30, 2019. *Id.* ¶ 30; Du Aff. (Dkt. No. 23-4) ¶ 3; *see* Du Dep. Tr. (Dkt. No. 40-1) at 36:3-7. Du was paid by Dingxiang. *See* Wang Aff. (Dkt. No. 29) Ex. A. She did not work at any of defendants' other restaurants. *See id.* ¶¶ 2-3; Du Dep. Tr. at 15:3-5.

From May 7, 2018 through January 31, 2019, Du worked six days a week at Birds of a Feather, either from 9:30 a.m. to 6:30 p.m. with no break or from 10:00 a.m. to 7:00 p.m. with no break. Am. Compl. ¶ 31; Du Aff. ¶ 4. From February 1, 2019 through October 30, 2019 (except for the first two weeks of October), she worked five days a week, either from 9:30 a.m. to 6:30 p.m. with no break or from 10:00 a.m. to 7:00 p.m. with no break. Am. Compl. ¶ 32; Du Aff. ¶ 5. Throughout her employment at Birds of a Feather, plaintiff was paid a flat monthly compensation. Am. Compl. ¶¶ 35-37; Du Aff. ¶¶ 8-10. She was "not paid overtime pay for overtime work," was not provided with weekly wage statements in Chinese – her native language – and was not paid a "spread of hours" premium for shifts longer than 10 hours. Am. Compl. ¶¶ 38-41; Du Aff. ¶¶ 11-14.[2]

---

[1] Except where otherwise indicated, the facts in this section are taken from the Amended Complaint and the declarations submitted in support of and in opposition to plaintiff's motion. At the conditional certification stage, courts "should not weigh the merits of the underlying claims," *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) (citing *Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)), and should not "resolve factual disputes, decide substantial issues going to the ultimate merits, or make credibility determinations." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158 (S.D.N.Y. 2014) (internal quotation marks omitted). Accordingly, where there is a conflict between the parties as to the merits of plaintiff's wage and hour claims, I treat the facts asserted by plaintiff as true. *See Cortes v. New Creators, Inc.*, 2015 WL 7076009, at *1 n.1 (S.D.N.Y. Nov. 12, 2015).

[2] The Court notes that plaintiff's allegations regarding weekly wage statements and the spread of hours premium are relevant only to her NYLL claims, which are not subject to collective certification under the FLSA. *See* NYLL § 195(3); 12 N.Y.C.R.R. §§ 142-2.4, 142-2.7, 142-2.18.

The Individual Defendants are "officers, directors, managers and/or majority shareholders or owners" of the three Corporate Defendants, which together employ at least 60 workers across the three restaurants they operate, including "pastry workers, kitchen workers, miscellaneous workers, steamers, [] sorters, fry woks, preparers, waiters, packers, deliverymen and dishwashers." Am. Compl. ¶¶ 11-17, 21-22. According to plaintiff, each of the Individual Defendants "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at [the Corporate Defendants]." *Id.* ¶¶ 12, 14, 16.

Plaintiff alleges that defendants' failure to pay the minimum wages and overtime premiums required by the FLSA and state law was willful. Am. Compl. ¶¶ 2, 24, 27, 55, 63-64. With respect to the FLSA claims that are the subject of the motion before the Court, plaintiff alleges that defendants "had a policy and practice" of "refusing to pay overtime compensation at the statutory rate of time and a half . . . for all hours worked in excess of forty (40) hours per workweek," in violation of 29 U.S.C. § 207(a)(1) and § 215(a). *Id.* ¶¶ 61.

**B.    Procedural Background**

Plaintiff filed this action on December 30, 2019 (Dkt. No. 1), and on March 23, 2020, it was referred to me for general pretrial management. (Dkt. No. 12.) On May 18, 2020, plaintiff filed her motion for collective certification (Dkt. No. 22), accompanied by a memorandum of law, plaintiff's affidavit, and a proposed notice and consent-to-sue form (Notice) (Dkt. No. 23-2). Plaintiff then filed an amended complaint on May 27, 2020. (Dkt. No. 25.) On June 15, 2020, defendants filed their brief in opposition to the motion for collective certification (Def. Mem.)

---

The Court further notes that Du does not allege that she personally worked any shifts longer than 10 hours. *See* Am. Compl. ¶¶ 38-41; Du Aff. ¶¶ 4-5.

(Dkt. No. 28), along with an affidavit signed by defendant Rui Gang Wang, who identifies himself as the General Manager of Birds of a Feather. Wang Aff. ¶ 1. On June 22, 2020, plaintiff filed her reply brief. (Pl. Reply Mem.) (Dkt. No. 30.) On August 25, 2020, defendants answered the amended complaint. (Dkt. No. 37.)

Following a conference on September 23, 2020, the Court invited the parties to file supplemental letters "updating the Court as to any evidence learned during the discovery period that bears on plaintiff's pending collective certification motion." (Dkt. No. 39 ¶ 2.) On November 3, 2020, defendants filed an affidavit attaching excerpts from plaintiff's deposition testimony. (Dkt. No. 40.) Plaintiff did not file a supplemental letter or submit any additional evidence.

## II.    DISCUSSION

### A.    Legal Standard

The FLSA provides that "any one or more employees" may bring an action against an employer "for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To become parties to such an action, employees other than the named plaintiff(s) must "opt in" by filing written consents in the court in which the action is brought. *Id.* "Although they are not required to do so by FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

Courts in this Circuit apply a "sensible" two-step method for determining whether to exercise this discretion. *See Myers*, 624 F.3d at 554-55. In the first step – known as "conditional certification" –named plaintiff must make a "'modest factual showing' that [she] and potential

opt-in plaintiffs 'together were victims of a common policy or plan that violated the law,'" *id.* at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)), at which point the trial court may send a notice to potential opt-in plaintiffs. *Id*. At the second stage, which typically occurs after discovery has been completed, the court determines whether the plaintiffs who opted in are in fact "similarly situated" to the named plaintiffs. *Id*. If not, the court may "de-certif[y]" the collective action and dismiss the opt-in plaintiffs' claims without prejudice. *Id*. During the initial "conditional certification" stage, the requirement of a "modest factual showing" cannot be satisfied solely by "unsupported assertions." *Myers*, 624 F.3d at 555. However, because the purpose of this first stage is "merely to determine *whether* 'similarly situated' plaintiffs do in fact exist," plaintiffs have a low burden of proof. *Id.* (emphasis in original); *accord Damassia v. Duane Reade, Inc.*, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) (quoting *Wraga v. Marble Lite, Inc.*, 2006 WL 2443554, at *1-2 (E.D.N.Y. Aug. 22, 2006)) ("[A] plaintiff's burden at this preliminary stage is 'minimal.'"). A showing that plaintiffs "were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class" is a sufficient basis from which to infer the "common policy" required for conditional certification at this stage. *Cortes*, 2015 WL 7076009, at *3 (citing *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007)). Documents properly considered in this inquiry "include plaintiffs' 'own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.'" *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 557-58 (S.D.N.Y. 2013) (quoting *Hamadou*, 915 F. Supp. 2d at 661). In an appropriate case, conditional collective certification may be based solely on the personal observations of one plaintiff. *See Hernandez v. Bare Burger Dio Inc.*, 2013 WL 3199292, at *3

6

(S.D.N.Y. June 25, 2013) (granting conditional collective action certification of all tipped employees at a single Bareburger location based on one employee's declaration).

In cases involving employees at multiple business locations, "courts consider whether the plaintiffs have made an adequate factual showing to support an inference that . . . a uniform policy or practice exists, and whether the locations share common ownership or management." *Trinidad*, 962 F. Supp. 2d at 558 (quoting *Hamadou*, 915 F. Supp. 2d at 662). Even when locations or businesses share common ownership, plaintiffs must allege sufficient facts to support an inference of a common policy across all locations or businesses. *See id.* at 559-60 (declining to authorize notice to all Pret a Manger restaurant locations in New York City, or even to the full list of locations at which the named plaintiffs had worked, where they failed to allege sufficient facts "supporting an inference of a common policy" spanning those stores and their testimony described certain inconsistent practices across stores); *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 356 (E.D.N.Y. 2008) (conditionally certifying a group of employees at one pizza store, but declining to include employees at five other stores in the same chain where plaintiffs made only "generalized allegations of wrongdoing" regarding one of the stores, supported by hearsay statements of questionable reliability); *cf. Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265, 270–71 (S.D.N.Y. 2012) (plaintiffs' assertions that they received "purely 'straight time' pay in the same distinctive manner . . . no matter where they worked or who supervised them" supported "a reasonable inference that plaintiffs' experiences reflected a company-wide policy").

## B.   Plaintiff's Evidentiary Showing

In her affidavit – which is the only evidence submitted in support of her motion – plaintiff Du states that from May 7, 2018 to August 30, 2018, she was paid a flat rate of $3,600

per month while working at Birds of a Feather. Du Aff. ¶ 8. From September 1, 2018 to August 31, 2019, she was paid flat rate of $3,750 per month. *Id.* ¶ 9. Finally, from September 1, 2019 to the end of her employment on October 30, 2019, she was paid a flat rate of $3,850 per month. *Id.* ¶ 10. She asserts that she "was not compensated at least at one-and-one-half [her] promised hourly wage for all hours worked above [40] in each workweek." *Id.* ¶ 14. Further, she was only given approximately 8-10 minutes for lunch or for dinner; she was not given a weekly pay statement in Chinese, her native language; and she was "not compensated for New York's 'spread of hours' premium for shifts that lasted longer than [10] hours at [her] promised rate." *Id.* ¶¶ 6-7, 12, 15.

Plaintiff also states that certain other employees "suffered [the] same practice and policy of Defendants who were also not paid overtime pay and minimum wages for all the hours worked more than forty (40) hours per week." Du Aff. ¶ 15. She then discusses seven individuals who worked in the kitchen and/or basement at Birds of a Feather. *Id*. ¶¶ 18-57.[3]

First, plaintiff describes an older coworker, known as "Da Shu" ("Uncle" in Mandarin), who often worked as a "Fry Wok, Oil Wok and Steamer in the kitchen and basement." Du Aff. ¶ 21. According to plaintiff, Da Shu worked late shifts (from 12:00 p.m. to 10:00 p.m.) six days a week until February 1, 2019, and five days a week thereafter. *Id*. ¶¶ 23-24. Plaintiff says that Da Shu was paid a flat monthly wage of $2,400 to $2,500 "before 2019," and a flat monthly wage of

---

[3] Defendant Wang explains that Birds of a Feather had "four departments: waiting services, kitchen, pastry, and delivery." Wang Aff. ¶ 4. The pastry (dim sum) department "is located at the basement," which is "a floor away from the kitchen." *Id*. ¶ 7. In this Memorandum and Order, the term "Kitchen and Pastry Workers" means employees who worked in either the kitchen or the pastry departments at Birds of a Feather. Kitchen and Pastry Workers include steamers, fry wok chefs, dishwashers, and pastry (dim sum) chefs, but not waiters, bussers, or delivery persons.

$2,700 after January 1, 2019. *Id.* ¶¶ 25, 26. Plaintiff explains that she is aware of Da Shu's wage and hours because she was "close with him and [they] talked a lot during work." *Id.* ¶ 27.

Second, plaintiff describes a coworker who served as a Fry Wok Chef and whom she knows only as "Sichuan Chao Guo Shi Fu" ("Sichuan Fry Wok Chef" in Mandarin). Du Aff. ¶ 63. Prior to February 1, 2019, Sichuan Chao Guo Shi Fu worked late shifts six days a week, *id.* ¶ 65; after February 1, 2019, Sichuan Chao Guo Shi Fu worked late shifts five days a week. *Id.* ¶ 66. Plaintiff states that she overheard a conversation that Sichuan Chao Guo Shi Fu conducted in the kitchen with two other employees, Xiao Di and "another Chao Guo Shi Fu" (another Fry Wok Chef) – both discussed below – and that, during the conversation, Sichuan Chao Guo Shi Fu told the others that he was getting paid "over three thousand dollars ($3000) a month." *Id.* ¶¶ 68-69.

Third, plaintiff describes "Xiao Di" ("Little Brother" in Mandarin). Xiao Di worked as an Oil Wok Chef and Steamer in the kitchen. Du Aff. ¶ 73. Prior to February 1, 2019, Xiao Di worked late shifts six days a week and an additional hour on weekends, *id.* ¶ 74; after February 1, 2019, he worked late shifts five days a week (with no additional hour on weekends). *Id.* ¶ 75. Plaintiff admits she was "not close with Xiao Di," but states that in or around January 2019, when she was getting lunch in the kitchen, she overheard him "chatting with two other kitchen workers about their pay being raised." *Id.* ¶ 77.[4] During that conversation, Xiao Di mentioned that his pay "got raised to over three thousand dollars ($3000) a month as of January, 2019." *Id.*

Fourth, plaintiff describes a coworker she knows only as "Chao Guo Shi Fu" ("Fry Wok Chef" in Mandarin). Chao Guo Shi Fu worked in the kitchen. Du Aff. ¶ 82. Prior to February 1,

---

[4] This appears to be the same overheard conversation that plaintiff first describes when discussing Sichuan Chao Guo Shi Fu's compensation. *Compare* Du Aff. ¶ 68 *with id.* ¶ 77.

2019, Chao Guo Shi Fu worked late shifts six days a week; after February 1, 2019, he worked late shifts five days a week. *Id.* ¶¶ 83-84. While overhearing the conversation between Sichuan Chao Guo Shi Fu, Xiao Di, and Chao Guo Shi Fu – discussed above – plaintiff learned that Chao Guo Shi Fu's pay "got raised to above $3,000 a month as of January, 2019." *Id.* ¶¶ 86-87.

Fifth, plaintiff describes Lei Lei, who – like plaintiff – worked as a dim sum chef at Birds of a Feather. Du Aff. ¶ 32.[5] Lei Lei worked morning shifts five days a week throughout his employment. *Id.* ¶ 34. Because plaintiff "talked with him a lot when [she] was working there," plaintiff was aware of Lei Lei's compensation. *Id.* ¶ 37. During one conversation, while "working in the basement together," Lei Lei told plaintiff that his compensation had been raised from $3,450 a month to $3,550 a month "since September, 2019." *Id.* ¶ 38.

Sixth, plaintiff describes Lu Shi Fu ("Chef Lu" in Mandarin), who worked as the Kitchen Head Chef. Du Aff. ¶ 41. Prior to February 1, 2019, Lu Shi Fu worked late shifts six days a week and an additional hour on weekends, *id.* ¶ 43; after February 1, 2019, he worked late shifts five days a week (with no additional hour on the weekends). *Id.* ¶ 44. Plaintiff admits that she does "not know specifically how much Lu Shi Fu was earning," but states that she "overheard" his salary while she was getting lunch in the kitchen in January 2019. *Id.* ¶ 47. During that conversation, Chao Guo Shi Fu "mentioned that Head Chef is getting paid over five thousand dollars ($5000) a month." *Id.* ¶ 48.[6]

---

[5] The paragraph numbering in the Du Affidavit is erratic. For example, the paragraphs describing Chao Guo Shi Fu are numbered 79-87. The paragraphs describing Lei Lei follow immediately thereafter but are numbered 30-38.

[6] This also appears to be the same overheard conversation that plaintiff first describes when discussing Sichuan Chao Guo Shi Fu's compensation. *Compare* Du Aff. ¶ 68 *with id*. ¶¶ 47-48. Chef Lu himself was not a party to the conversation. *Id*. ¶¶ 47-48.

Seventh, plaintiff describes a coworker she refers to as Zhang Shi Fu ("Trainer Zhang" in Mandarin). Zhang Shi Fu also worked as a dim sum chef, Du Aff. ¶ 52, and was plaintiff's trainer. *Id.* ¶ 53. He worked morning shifts six days a week. *Id.* ¶ 54. Plaintiff and Zhang Shi Fu frequently chatted while making dim sum in the basement together. *Id.* ¶ 56. Around mid-July 2017, while chatting in the basement, Zhang Shi Fu told plaintiff he was paid a flat monthly wage of $4,000. *Id.* ¶ 57.[7]

### C.    Analysis

To the extent the proposed collective is limited to Kitchen and Pastry Workers at Birds of a Feather, plaintiff's affidavit, satisfies – albeit barely – the "modest showing that is required of [plaintiffs] at this preliminary stage: they were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class." *Iglesias-Mendoza*, 239 F.R.D. at 368; *Hernandez*, 2013 WL 3199292, at *3.

"There is a 'consensus in this district that where a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations.'" *Racey v. Jay-Jay Cabaret, Inc.*, 2016 WL 3020933, at *4 (S.D.N.Y. May 23, 2016) (quoting *Reyes v. Nidaja, LLC*, 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2015)). However, plaintiffs are not required to provide "the times and dates" of the conversations, so long as a court "'can fairly infer' that other [employees] 'labored under similar working conditions and thus suffered the

---

[7] The Court notes that if this conversation took place in July 2017, as plaintiff attests, it predated her employment at Birds of a Feather.

same violations of the FLSA.'" *Id.* (quoting *Guzman v. Three Amigos SJL Inc.*, 117 F. Supp. 3d 516, 525 (S.D.N.Y. 2015)).

In this case, the Court may fairly so infer. As described above, plaintiff has submitted a sworn affidavit, asserting that she personally spoke with certain Kitchen and Pastry Workers about their compensation, and overheard a conversation between other Kitchen and Pastry Workers about their compensation. As a result, plaintiff learned that seven Kitchen and Pastry Workers other than herself worked more than 40 hours per week and were compensated by means of a flat monthly wage. Du's affidavit includes details such as the names (or nicknames) of the coworkers, their physical descriptions, and the timing and circumstances of at least some of the conversations. *See Cuaya v. VI Development Grp., LLC*, 2020 WL 5494371, at *5 (S.D.N.Y. Sept. 10, 2020) (finding a similar sworn declaration containing assertions that plaintiff had spoken with at least 10 other employees about defendants' wage-and-hour policies, along with certain minimal details, to be sufficient to satisfy plaintiff's "modest factual showing").

Although defendants take issue with plaintiff's inability to provide her coworkers' full names, it is "not necessarily a shortcoming" that plaintiff only identifies these individuals by first name or by nickname. *Id.*; *accord Zamora v. L Plus L Prods. LLC*, 2019 WL 5460559, at *5 (S.D.N.Y. Oct. 15, 2019).[8] Nor is it necessarily problematic that plaintiff submits a single affidavit, which in turn relies in part on "generalized hearsay statements." *See* Def. Mem. at 7. In

---

[8] Apparently not content to rely on the law for this point, plaintiff also argues, in her reply brief, that defendants' counsel Jiajing Fan "lacks a clear understanding of Asian culture where coworkers address each other with honorific [sic] or by nick names, instead of one's actual name." Pl. Reply Mem. at 2. Plaintiff continues, "This ignorance is particularly egregious considering the drafter of the memorandum in opposition . . . is herself of Chinese descent." What the Court finds "particularly egregious" is plaintiff's *ad hominem* attack on opposing counsel based on counsel's ethnicity. As this case progresses, plaintiff and her counsel are cautioned to refrain from such tactics.

this District, "courts "routinely grant[] conditional collective certification based solely on the personal observations of one plaintiff's affidavit." *Hernandez*, 2013 WL 3199292, at *3 (collecting cases); *see also Cuaya*, 2020 WL 5494371, at *6. Moreover, at this preliminary stage, "courts regularly rely on plaintiffs' affidavits and hearsay statements in determining the propriety of sending notice." *Cuaya*, 2020 WL 5494371, at *6 (quoting *Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 563 (S.D.N.Y. 2012)). Here, plaintiff has adequately described conversations with other Kitchen and Pastry Workers at her workplace concerning their wages and has thereby satisfied her minimal burden of showing that she is "similarly situated" to other members of the proposed group, at least to the extent it consists of Kitchen and Pastry Workers at Birds of a Feather.

However, to the extent the proposed collective extends to employees who did not primarily work in the kitchen or basement (such as waiters, bussers, and delivery persons), the Court cannot find plaintiff has satisfied her burden. Each of the seven employees plaintiff names in her affidavit is or was a Kitchen or Pastry Worker. Du Aff. ¶¶ 19-57. Rather than offering "specific conversations, names, or other details to show that employees other than kitchen staff were part of a common policy that violated the FLSA," *Leonardo v. ASC, Inc.*, 2018 WL 5981996, at *3 (S.D.N.Y. Nov. 14, 2018), plaintiff's affidavit never identifies (much less provides any details about the compensation of) a single employee who was not a Kitchen or Pastry Worker.[9] *See Cuaya*, 2020 WL 5494371, at *6 (plaintiff's "conclusory allegations fail to make even a modest showing that any employees – other than kitchen employees – were subject

---

[9] Nor does plaintiff provide any information about the hours worked by employees in other departments. According to defendant Wang, "[t]he waiting staff, kitchen workers and delivery have different shift scheduling from [the] pastry department." Wang Aff. ¶ 6.

to similar conditions" where plaintiff had only described conversations with kitchen staff and had only made conclusory allegations regarding non-kitchen staff). On this record, the Court cannot conditionally certify a collective extending beyond the Kitchen and Pastry Workers.

Nor can the Court conditionally certify a collective extending beyond Birds of a Feather. Plaintiff alleges in general terms that all three Corporate Defendants constitute a single integrated enterprise. Am. Compl. ¶ 18. "When assessing whether distinct, but closely affiliated entities should be treated as a single employer for FLSA purposes, district courts in this circuit have applied the 'single integrated enterprise' test, which considers (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Uraga v. Amici 519 LLC*, 2018 WL 3579850, at *3 (S.D.N.Y. July 25, 2018) (quoting *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014)) (internal quotations omitted). Where, as here, a plaintiff invokes the "single integrated enterprise" doctrine to seek conditional certification of a collective including employees of different corporate entities, courts in the Second Circuit generally require that plaintiff to "provide[] sufficient factual information to support [her] allegation that Defendants are a single integrated enterprise." *Id.* at *4. Accordingly, plaintiff Du must make at least a "modest showing" that defendants' restaurants not only "share common ownership" but "treat employees, equipment, and supplies interchangeably." *Lijun Geng v. Shu Han Ju Restaurant II Corp.*, 2019 WL 4493429, at *14 (S.D.N.Y. Sept. 9, 2019) (collecting cases); *accord Cuaya*, 2020 WL 5494371, at *8. She must also show that each restaurant "had employees that were 'similarly situated' with regard to the allegedly unlawful overtime policies." *Trinidad*, 962 F. Supp. 2d at 557-60 (conditionally certifying a collective extending to six Pret a Manger stores rather than all 33 stores in New York City or even all ten stores at which one or more of the named plaintiffs worked); *see also Gomez*

14

*v. Kitchenette 123 Inc.*, 2017 WL 4326071, at *6-7 (S.D.N.Y. Sept. 5, 2017) (conditionally certifying a collective as to two Kitchenette locations, but not as to a third where plaintiff provided no evidence "that the specific policies he identifies . . . existed generally at all of the Kitchenette locations"); *Jing Fang Luo v. Panarium Kissena Inc.*, 2016 WL 11263668, at *9-10 (E.D.N.Y. Nov. 23, 2016), (conditionally certifying a collective extending to just three Fay Da Bakery locations where plaintiffs "have simply not provided the Court with enough specifics to meet even the modest burden that they face at this juncture" as to other locations and collecting cases), *report and recommendation adopted*, 2017 WL 1216571 (E.D.N.Y. Mar. 30, 2017).

Here, plaintiff alleges that Birds of a Feather, Café China, and China Blue are commonly owned by the Individual Defendants (via the Corporate Defendants), Am. Compl. ¶¶ 11-17, and that they sometimes "share staff, including Big Chef LU who came to Birds of a Feather from China Blue or Café China, and Big Pastry Chef ZHANG who came to Birds of a Feather from China Blue." *Id*. ¶ 18(a). If true, however, this allegation demonstrates only that two Birds of a Feather employees were previously employees at other restaurants owned by defendants. [10]

Plaintiff further alleges – without specifics – that employees are paid "for the work performed at the enterprise no matter what location they worked," and that the Corporate Defendants are advertised as an enterprise. Am. Compl. ¶¶ 18(b), (c). But these allegations are vague, conclusory, and lack either factual detail or evidentiary support. In her affidavit, plaintiff does not attest to any common management or integrated operations among Birds of a Feather,

---

[10]In her deposition testimony, plaintiff added that Birds of a Feather brought over an employee from Café China or China Blue during the two-week period in October 2019 in which she was injured and could not work, leaving Birds of a Feather "shorthanded." Du Dep. Tr. at 36:3-7. While this may also be true, it does not suggest that defendants routinely treated employees at all three restaurants as "interchangeable," nor does it shed any light upon the hours worked or the wages paid at the other two restaurants.

Café China, and China Blue. Moreover, she says nothing about the hours worked or wages paid at the restaurants other than Birds of a Feather. Accordingly, she has not demonstrated that the same or similar allegedly unlawful practices are used in all three.

The inadequacy of plaintiff's showing stands in stark contrast to the factual showing made in cases where courts in this District found that plaintiffs had sufficiently alleged a single integrated enterprise with "similarly situated" employees across multiple businesses or locations. For example, in *Uraga*, the commonly-owned "Essen" restaurants had nearly "identical menus," "interchangeable supplies and employees," and "also share[d] a common logo, décor, and [were] advertised jointly on Defendants' website." 2018 WL 3579850, at *4. Likewise, in *Juarez*, the "Moonstruck Diners," which were owned and managed by the same family, "maintain[ed] the same or similar interior décor, use[d] the same or similar menus, and require[d] non-exempt workers to wear the same uniform," while "two of the diners share[d] a website," and employees regularly worked at multiple locations. 29 F. Supp. 3d at 367-68, 370-71 ("These factual allegations plausibly suggest that the corporate Defendants had interrelated operations (their website, décor, menus, and uniforms), common management (Kapetanos), and common ownership or financial control (also Kapetanos)).

Because plaintiff failed to make the requisite factual showing that employees of Café China and China Blue are "similarly situated" to her and the other Kitchen and Pastry Workers at Birds of a Feather, notice will be limited to the Kitchen and Pastry Workers employed at Birds of a Feather.

### D.   Production of Potential Opt-In Plaintiff Information

Plaintiff requests that the Court direct defendants to produce an excel spreadsheet containing contact information for the potential opt-in plaintiffs, including (but not limited to)

16

their "last known mailing addresses, [last] known telephone numbers, last known email addresses, last known WhatsApp, WeChat and/or Facebook usernames, work location, dates of employment, and position." Pl. Mem. at 13.

Courts in this Circuit "routinely grant . . . motions to compel production of the names and addresses of potentially similarly situated employees who may wish to 'opt-in' to a collective action" following conditional certification. *Anglada v. Linens 'N Things, Inc.*, 2007 WL 1552511, at *7 (S.D.N.Y. Apr. 26, 2007) (collecting cases), *report and recommendation adopted* (May 22, 2007). Likewise, courts "commonly grant" requests for production of mailing addresses and dates of employment for the potential opt-in plaintiffs. *Cortes*, 2015 WL 7076009, at *4.

While courts in this District vary in their willingness to order production of telephone numbers and email addresses, it is increasingly clear that this information permits a more efficient means of providing notice than first class mail. *See, e.g.*, *Diatta v. Iguana New York Ltd.*, 2016 WL 2865132, at *6 (S.D.N.Y. May 10, 2016) ("Courts routinely order discovery of names, addresses, and telephone numbers in FLSA actions."); *Racey*, 2016 WL 3020933, at *10 (ordering defendants to provide "a list of the names, addresses, telephone numbers, email addresses, and dates of employment for potential class members"); *Hernandez v. NGM Mgmt. Grp. LLC*, 2013 WL 5303766, at *5 (S.D.N.Y. Sept. 20, 2013) (ordering defendants to produce "a computer-readable list of the names, addresses, compensation rates, telephone numbers, and dates of employment" for all potential opt-in plaintiffs). For the same reason, courts in this District have in some cases ordered the production of the potential opt-in plaintiffs' social media information, including WhatsApp, WeChat, and Facebook usernames. *See Qiang Lu v. Purple Sushi Inc.*, 447 F. Supp. 3d 89, 97 (S.D.N.Y. 2020) (granting plaintiff's request for such

17

information, despite "possible privacy concerns," because the court must consider "the possibility that some members may not have phone numbers or stable addresses"); *Ting Qui Qui v. Shanghai Cuisine Inc.*, 2019 WL 6002371, at *4 (S.D.N.Y. Nov. 14, 2019) (granting request for social media information); *Jian Wu v. Sushi Nomado of Manhattan, Inc.*, 2019 WL 3759126, at *12-13 (S.D.N.Y. July 25, 2019) (same).

On balance, this Court agrees with the *Qiang Lu* court that the provision of social media usernames can help ensure that notice of the collective action reaches all potential opt-in plaintiffs. 447 F. Supp. 3d at 97. Defendants will therefore be required to produce to plaintiff's counsel a spreadsheet (in excel format if possible) containing the names, dates of employment, positions, last known mailing addresses, last known telephone numbers, last known email addresses, and last known WhatsApp, WeChat and/or Facebook usernames, of all current and former Kitchen and Pastry Workers employed by Birds of a Feather on or after December 30, 2016.

### E.    Form, Method, and Timing of Notice

The next set of issues involves the form, method, and timing of the information to be sent to the potential opt-in plaintiffs. Plaintiff requests that the Court approve her proposed Notice – which, among other things, presumes that the collective will include all workers employed at all three of defendants' restaurants on or after December 30, 2016 (three years prior to the filing of plaintiff's complaint), and gives those employees 90 days to "opt in" to this action. *See* Pl. Mem. at 18-19. Additionally, although plaintiff's Notice identifies Troy Law PLLC (Troy Law) as counsel for plaintiff, it omits any information about defendants' counsel. *Id.* at 16-17. Plaintiff further requests that the Court: (1) authorize plaintiff's counsel to disseminate the Notice via mail, email, text message or social media chat, and on counsel's website, *id.* at 15-17; (2) require

defendants to post the Notice in a conspicuous location in their restaurants and to include it in the employees' pay envelopes, *id*. at 17-18; (3) authorize plaintiff's counsel to send a reminder, via mail and email, to all individuals who have failed to respond approximately halfway through the notice period, *id*. at 18; and (4) require that "all notices or posts to employees' attention be in Chinese." *Id*. at 21.

Defendants ask the Court to limit the Notice to Kitchen and Pastry Workers employed by Birds of a Feather on or after December 30, 2017 (two years prior to the filing of plaintiff's complaint). *See* Def. Mem. at 15, 17. Additionally, according to defendants, Troy Law should disclose its fee arrangement with any prospective plaintiffs, including "the percentage of any recovery that would be paid as attorney fees from any recovery by opt-in plaintiffs." *Id*. at 16.

### 1.    Content of Notice

"Neither the [FLSA] statute, nor the courts, specifically outline what form court-authorized notice should take, nor what provisions the notice should contain." *Lee v. ABC Carpet & Home*, 2008 WL 2073932, at *1 (S.D.N.Y. May 9, 2008). "Under the FLSA, the content of the notice is left to the court's discretion." *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009); *accord Lopez v. JVA Indus., Inc.*, 2015 WL 5052575, at *4 (S.D.N.Y. Aug. 27, 2015) (noting that the FLSA "vests the district court with broad discretion" with respect to the notice of pending litigation to be provided to potential opt-in plaintiffs).

"The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide 'accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate.'" *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (quoting

*Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)). To that end, the notice generally should contain:

> a description of some or all of the following: (1) the purpose of the notice; (2) the nature of the lawsuit filed and the relief being sought; (3) the proposed class composition; (4) the legal effect of joining the lawsuit; (5) the fact that the court has not taken any position regarding the merits of the lawsuit; (6) how to join the lawsuit; (7) the purely voluntary nature of the decision and the legal effect of not joining the lawsuit; (8) the prohibition against retaliation; and (9) the relevant contact information for any inquiries.

*Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012). Courts in this District have also held that the notice should include a warning that opt-in plaintiffs may be required to provide information, appear for deposition, or testify in court. *See Salomon*, 847 F. Supp. 2d at 567 (modifying proposed notice to explain such a possibility).

Although plaintiff's proposed Notice generally contains the required information, it is overbroad insofar as it is addressed to – and invites opt-ins from – employees other than Kitchen and Pastry Workers at Birds of a Feather. In light of this Court's ruling limiting the collective to those employees, plaintiff must remove the references to China Blue and Café China from the list on the first page of the Notice, and must edit the remainder of the Notice as necessary to make it clear that only current and former Kitchen and Pastry Workers at Birds of a Feather are included.

Defendants are generally correct that the Notice should disclose the fee arrangement between Troy Law and any opt-in plaintiffs. *See Mendoza v. Ashiya Sushi 5, Inc.*, 2013 WL 5211839, at *8 (S.D.N.Y. Sept. 16, 2013) ("[i]ncluding such information allows potential plaintiffs to understand the details of the arrangement to which they would consent if they chose to opt into the collective action"); *Fasanelli*, 516 F. Supp. 2d at 324 ("Because the fee structure may impact [an] 'opt-in' Plaintiff's recovery, if any, notice of those agreements should be

provided up front."). However, the Court will not require disclosure of the precise percentage or amount to be paid to Troy Law as attorney fees. Under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), and *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020), this Court must approve any award of fees and costs as fair and reasonable. It would therefore be "premature to include that specific information on a Notice of Pendency." *Lianhua Weng v. Kung Fu Little Steamed Buns Ramen Inc.*, 2018 WL 1737726, at *6 (S.D.N.Y. Mar. 26, 2018).

Here, the proposed Notice states in general terms that, for any opt-in plaintiff who chooses to be represented by Troy Law, "their costs and fees will be paid out of any settlement or money judgment Plaintiffs receive against Defendants," Notice at 4, and that counsel "will not receive any fee" if there is no settlement or money judgment. *Id.* The consent form appended to the Notice explains further that if there is a settlement or judgment, Troy Law "will petition the Court for reasonable attorneys' fees and expenses" and will "receive a proportion of any such gross settlement or judgment amount." *Id.* at 5. While not inaccurate, this language fails adequately to convey that, upon settlement, the Court will evaluate any request for fees and costs by plaintiffs' counsel and will approve such an award only after determining that it is fair and reasonable. Plaintiff shall add language to the Notice making this point clear.

Defendants do not object to plaintiff's request that she be permitted to omit defendants' counsel's contact information from the Notice, *see* Pl. Mem. at 16-17; consequently, the Court grants that request. *See Gao v. Umi Sushi*, No. 18-CV-6439-ALC-SN (S.D.N.Y. Mar. 21, 2019) (authorizing omission of defense counsel's contact information because "the risk of confusion and mischief" outweighs "the remote possibility that defense counsel is a source of unique information).

### 2.    Notice Period

The statute of limitations under the FLSA is three years for willful violations and two years for non-willful violations. 29 U.S.C. § 255(a). Here, plaintiff alleges willful violations, *see* Am. Compl. ¶¶ 2, 24, 27, 55, 63-64; consequently, she requests that the notice period begin three years prior to the filing of her initial complaint (that is, that the Notice go to eligible workers who were employed at Birds of a Feather on or after December 30, 3016). Pl. Mem. at 20. Defendants argue that any misconduct on their part was not willful and therefore that "the collective action period should only be two years" (that is, that the Notice go only to eligible workers who were employed on or after December 30, 2017). Def. Mem. at 17.

Where, as here, "there has been no substantive discovery as to the appropriate temporal scope of the prospective class of member plaintiffs, and where the Plaintiff has alleged a willful violation of the FLSA, it is prudent to certify a broader class of plaintiffs that can be limited subsequently, if appropriate, during the second phase of the collective action certification process." *Anglada*, 2007 WL 1552511, at *8; *see also Gaspar v. Personal Touch Moving, Inc.*, 2014 WL 4593944, at *6 (S.D.N.Y. Sept. 15, 2014) ("where willfulness is disputed, it is appropriate to look to the three-year period in determining the scope of a collective action"); *Fasanelli*, 516 F. Supp. 2d at 323 (permitting a three-year period "[o]ut of an abundance of caution," as well as to "avoid any merit-based determinations at this time"). The Court agrees, and consequently the Court will certify a collective incorporating a three-year notice period.[11]

---

[11] Defendants cite *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114 (S.D.N.Y. 2014), for the proposition that plaintiff must provide "evidence" of a willful violation to support a three-year notice period. Def. Mem. at 17. In that case, however, the court shortened the notice period to two years because defendants had already filed a motion for summary judgment in which they "satisfied their initial burden by demonstrating that Plaintiffs could not produce admissible evidence to support a finding of a willful violation." *Schear*, 297 F.R.D. at 129. Here, no such

In this Circuit, courts routinely calculate the notice period from the date on which the lawsuit was filed (not the date of conditional certification), "with the understanding that challenges to the timeliness of individual plaintiff's actions will be entertained at a later date." *Bittencourt v. Ferrara Bakery & Café Inc.*, 310 F.R.D. 106, 116-17 (S.D.N.Y. 2015) (quoting *Hamadou*, 915 F. Supp. 2d at 668, and collecting cases). Defendants do not dispute this point. Consequently, the Notice, once revised in accordance with this Memorandum and Order, will go to all Kitchen and Pastry Workers who were employed at Birds of a Feather on or after December 30, 2016.

### 3.   Opt-in Period

The standard opt-in period in this Circuit, following conditional certification, is 60 days. *See Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 566-67 (S.D.N.Y. 2015) ("[c]ourts in this Circuit routinely restrict the opt-in period to sixty days") (quoting *Fa Ting Wang v. Empire State Auto Corp.*, 2015 WL 4603117, at *11 (E.D.N.Y. July 29, 2015) (collecting cases)). Plaintiff requests a longer opt-in period (90 days), arguing generically that "[t]here is no detriment to plaintiffs from extending this period and doing so will make it more likely that all employees who intend to bring such claims will do so in this action." Pl. Mem. at 19. Notwithstanding the lack of any specific justification for a 90-day opt-in period in this case, defendants do not object. Moreover, courts in this District generally approve 90-day opt-in periods "where the period is agreed upon between the parties." *Whitehorn*, 767 F. Supp. 2d at

---

motion has been filed, no evidentiary showing has been made as to willfulness (or lack of willfulness), and consequently it would be inappropriate for this Court to preemptively shorten the notice period.

452; *Gui Zhen Zhu v. Matsu Corp.*, 424 F. Supp. 3d 253, 272 (D. Conn. 2020). Accordingly, this Court will grant plaintiff's request and permit a 90-day opt-in period.

### 4. Methods of Notice

Plaintiff proposes sending the Notice to members of the collective in Chinese as well as English. Pl. Mem. at 1, 20-21. "Generally, courts permit notice to be 'translated into the mother tongue of non-English speaking groups of potential plaintiffs.'" *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016) (quoting *Colon v. Major Perry Street Corp.*, 2013 WL 3328223, at *8 (S.D.N.Y. July 2, 2013)); *accord Sanchez v. El Rancho Sports Bar Corp.*, 2014 WL 1998236, at *5 (S.D.N.Y. May 13, 2014) (Spanish-language notice forms permitted). Here, plaintiff attests that Chinese is her native language. Du Aff. ¶ 12. Additionally, she identifies her coworkers by their hometowns in China, *see id.* ¶¶ 19, 61, 70, 79, 30, 39, and identifies them by their Mandarin honorifics or nicknames. Under these circumstances, the Court agrees that it would be appropriate for plaintiff's counsel to have the Notice translated into Chinese and to disseminate it in both English and Chinese.

As noted above, plaintiff also requests that the Court: (1) authorize plaintiff's counsel to disseminate the Notice via mail, email, text message or social media chat, and on counsel's website; (2) require defendants to post the Notice in a conspicuous location in their restaurants and to include it in the employees' pay envelopes; and (3) authorize plaintiff's counsel to send a reminder, via mail and email, to all individuals who have failed to respond approximately halfway through the notice period. Pl. Mem. at 15-18. Defendants do not object to any of these requests. For the reasons set forth below, the Court will grant most of them.

The Court agrees that disseminating the Notice by mail, email, text message, and social media chat is appropriate. *See Qiang Lu*, 447 F. Supp. 3d at 97 (permitting notice to be

"disseminated in any relevant language via mail, email, text, or social media platform"); *Huer Huang v. Shanghai City Corp.*, 2020 WL 5849099, at *16 (S.D.N.Y. Oct. 1, 2020) (permitting notice on social media because "[s]ocial media is now used to convey all kinds of important messages to the populace and has become an important means of receiving information") (collecting cases). Additionally, the Notice may be posted on plaintiff's counsel's website, *see Qiang Lu*, 447 F. Supp. 3d at 97 (permitting such posting), and must be displayed in a conspicuous location, convenient to Kitchen and Pastry Workers, at Birds of a Feather. *See Whitehorn*, 767 F. Supp. 2d at 449 (requiring posting of notice in defendants' restaurants over defendants' objections that such postings would "unnecessarily disturb their business"); *Trinidad*, 962 F. Supp. 2d at 564 (ordering defendants to post notice "in a non-public area" of six restaurant locations, noting that "Courts in this Circuit frequently approve posting in the workplace," and collecting cases).

However, the Court will not require defendants to include the Notice in the employees' pay envelopes. Plaintiff does not cite any Second Circuit authority for such a requirement, and in fact, courts in this Circuit have been wary of permitting this form of dissemination, as it "may suggest either that the notice originates with the employer or that filling it out may actually be required or expected by the employer." *Diaz v. New York Paving Inc.*, 340 F. Supp. 372, 388 (S.D.N.Y. 2018); *see also Li Ni v. Red Tiger Dumpling House Inc.*, 2020 WL 7078533, at *12 (E.D.N.Y. Nov. 30, 2020) (denying plaintiff's request to disseminate the Notice in pay envelopes or with paycheck information because the court could not "locate any Second Circuit decision to date which states or suggests that providing notice through pay envelopes may be an appropriate method of dissemination in certain situations"); *Chui v. Am. Yuexianggui of LI LLC*, 2020 WL 3618892, at *11 (E.D.N.Y. July 2, 2020) (same).

Finally, with respect to sending reminders via mail and email halfway through the opt-in period, the Court grants plaintiff's request. *See Chhab v. Darden Rests., Inc.*, 2013 U.S. Dist. LEXIS 135926, at *51 (S.D.N.Y. Sept. 19, 2013) (collecting cases).

### F.    Equitable Tolling

Ordinarily, the statute of limitations in an FLSA collective action "continues to run with respect to each potential plaintiff's collective action claim until that plaintiff files the written consent form opting into the suit." *Whitehorn*, 767 F. Supp. 2d at 449; 29 U.S.C. § 256. In such a case, equitable tolling may be warranted to avoid "inequitable circumstances" where plaintiffs "have acted with reasonable diligence in pursuing their claims," but where "a substantial number of class members may now be time-barred through no fault of counsel or the class representative." *Jackson*, 298 F.R.D. at 170.

Here, in order to avoid such "inequitable circumstances," plaintiff proactively seeks equitable tolling of the statute of limitations, for all potential opt-in plaintiffs, "for 90 days" or "until the expiration of the Opt-In Period." Pl. Mem. at 21-23.[12] That request is premature. At present, this case does not present the kind of "rare and exceptional circumstances" that would merit equitable tolling. *Andon v. SDG Props., Inc.*, 2018 WL 3970910, at *3 (S.D.N.Y. Aug. 20, 2018) ("Equitable tolling is appropriate only in rare and exceptional circumstances . . . where a plaintiff has been prevented in some extraordinary way from exercising his rights.") (internal quotations omitted). Because "the application of the equitable tolling standard is 'highly case-specific,' and the 'burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff,'" *Contrera v. Langer*, 278 F. Supp. 3d 702, 726 (S.D.N.Y. 2017) (quoting *Wilder v.*

---

[12] The Court presumes (although plaintiff's brief does not expressly say so) that the proposed tolling period would begin with the publication of the Notice.

*U.S. Dep't of Veterans Affairs*, 175 F. Supp. 3d 82, 90 (S.D.N.Y. 2016)), equitable tolling is generally not appropriate at the conditional certification stage. The Court's ruling on this point is without prejudice to a later application for equitable tolling by one or more individual plaintiffs, should the situation so warrant. *See, e.g., Cuaya*, 2020 WL 5494371, at *13-14 (denying equitable tolling without prejudice because plaintiff "failed to allege that any potential opt-in plaintiff exists 'who intends to join the collective but who risks becoming time-barred or has been prevented in some extraordinary way from exercising his rights'").

## III.   CONCLUSION

For the foregoing reasons, plaintiff's motion for conditional collective certification is GRANTED as to Kitchen and Pastry Workers employed at Birds of a Feather on or after December 30, 2016.

It is hereby ORDERED that, no later than **January 15, 2021**:

1.   Defendants shall produce a spreadsheet, in excel if possible, containing the names, last known mailing addresses, last known telephone numbers, last known email addresses, last known WhatsApp, WeChat and/or Facebook usernames, dates of employment, and positions of all Kitchen and Pastry Workers employed at Birds of a Feather on or after December 30, 2016; and

2.   The parties shall, after meeting and conferring, prepare and submit to the Court, for approval, a revised form of notice (and related consent form) incorporating the Court's rulings.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 22.

Dated: New York, New York
      December 17, 2020                  **SO ORDERED**.

**BARBARA MOSES**
**United States Magistrate Judge**